# Exhibit 4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| COALITION FOR TJ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil No. 1:21-cv-00296-CMH-JFA |
| ) | |
| FAIRFAX COUNTY SCHOOL BOARD, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT FAIRFAX COUNTY SCHOOL BOARD'S ANSWERS
TO PLAINTIFF COALITION FOR TJ'S FIRST SET OF INTERROGATORIES**

Defendant Fairfax County School Board (the "School Board") responds to Plaintiff Coalition for TJ's ("Plaintiff") First Set of Interrogatories as follows.

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

1. The School Board objects to the unenumerated instructions and definitions to the extent they purport to require the School Board to provide information beyond what is required by the Federal Rules of Civil Procedure or Local Rules of this Court, or that violates the principles of proportionality embedded in the Federal Rules of Civil Procedure.

2. The School Board objects to Plaintiff's instructions and definitions to the extent that they purport to require the School Board to divulge information or documents that are subject to the attorney-client privilege or the work product doctrine, or that constitute the School Board's trial preparation materials, attorney mental impressions, or documents prepared in anticipation of litigation, or that are protected by any other privilege or immunity.

1

culture, and neurodiversity. The student body of Thomas Jefferson was drawn from a small subset of middle schools, and included very few low-income students, English Language Learners, students receiving special education services, and students who identify as Black, Latino, or multiracial. Though what one considers "incredibly diverse" is necessarily a matter of subjective opinion, the student population of TJ would not be considered "incredibly diverse" as measured against the pool of students who were eligible for admission to TJ.

**INTERROGATORY NO. 11:** State all reasons for the change from the previous TJ admissions process to the current TJ admissions process.

**OBJECTION:** The School Board objects to this Interrogatory on the grounds that it would require the School Board to invade the deliberative processes of individual members of the School Board who voted in favor of the TJ admissions policy changes and whose legislative acts are protected by privilege.

**ANSWER:**

The changes made to the admissions policy in October and December of 2020 eliminated the barriers that were impeding a broad range of students with a passion and aptitude for math and science from having meaningful access to Thomas Jefferson. Under the prior admissions program, the student body of Thomas Jefferson tended to be drawn from a small subset of middle schools, and it included very few low-income students, English Language Learners, students receiving special education services, and students who identify as Black, Latino, or multiracial.

The Division Superintendent at a public work session on September 15, 2020, had proposed to the School Board to make multiple changes to the TJ Admissions Process. Those changes included eliminating the application fee, standardized assessment tests, and teacher recommendations. The Superintendent proposed those changes to enhance the pool of talented applicants and remove potential barriers that were keeping students from disadvantaged groups

-11-

from applying or making it to the semifinalist or finalist rounds. Eliminating the application fee would remove a financial barrier that prevented some students from seeking admission. Eliminating the standardized admissions tests would remove a barrier that prevented many students from disadvantaged backgrounds from continuing to the qualitative assessment portion of the admissions process. The standardized testing requirement also posed a financial barrier for those students and families who could not afford expensive test-preparation services. Eliminating teacher recommendations removed the subjectivity that may have worked against applicants from disadvantaged groups. The teacher-recommendation requirement also favored students from the small number of middle schools sending the most students to TJ, as teachers from underrepresented schools had less experience and success in advocating admission for their students. The proposed changes also included raising the minimum GPA from 3.0 to 3.5, and using a merits-based lottery to select among a pool of qualified applicants.

On October 6, 2020, the School Board voted to eliminate the $100 application fee and the standardized testing as part of the TJ Admissions Process for students applying to enter in Fall 2021. The School Board's decision on October 6 enabled the school system to forgo arranging the ACT Aspire and Insight Assessment (Quant-Q) testing that would ordinarily have been administered before the end of November. The School Board also requested the Superintendent to increase the size of the admitted class from 480 students to 550. The School Board did not decide the remaining components of the process at that time. The School Board's vote in favor of the changes adopted on October 6, 2020 was unanimous. Many School Board members stated during the meeting why they individually supported the changes, and their remarks are contained in the audiovisual recording of the October 6, 2020 which is publically available.

The School Board discussed changes to the TJ admissions process during its meetings on December 7 and December 17, 2020. It voted 10-1-1 in favor of changes to other components of the TJ admissions process. Those changes included raising the floor for eligibility by increasing the minimum unweighted GPA from 3.0 to 3.5, and requiring 8th-grade applicants to be enrolled in a full-year honors Algebra I course or higher, an honors science course, and at least one other honors course or the Young Scholars program. The School Board decided that each middle school should be allocated seats equivalent to 1.5% of its 8th-grade class size, with seats offered in the first instance to the top applicants from that school, and that the selection process must be race-neutral.

The School Board consists of twelve individual members who do not vote on any matter for identical reasons, and the deliberative process engaged in by individual School Board members is protected by privilege. Nevertheless, individual School Board members contemporaneously stated many of their reasons for voting to change the admissions policy at Thomas Jefferson during the work sessions of September 15, 2020, October 6, 2020, December 7, 2020, and December 17, 2020. Full recordings of those sessions can be obtained at https://www.fcps.edu/school-board/school-board-meetings/2020-21-school-board-meetings. Individual Board Members also expressed their views in written communications with stakeholders and colleagues. Those records are being produced in response to Plaintiff's Requests for Production. Individual School Board members also consulted with one another, and each member was informed by his or her own experience and background in making decisions relating to the admissions policy. It would be impracticable, if not impossible, to identify every reason that factored into each School Board member's deliberation in casting their individual votes.

-14-

The changes adopted by the School Board on October 6 and December 17, 2020 enabled the top applicants from every middle school who met the criteria for eligibility to attend TJ, and the selection process was procedurally fair because admissions evaluators were not provided the name, gender, race, or ethnicity of individual applicants, evaluating each applicant on merit based on the admissions criteria set forth in the updated regulation.

**INTERROGATORY NO. 12:** Describe each step of the current TJ admissions process, including identifying each employee, agent, or officer of Fairfax County Public Schools who is involved at each step of the process.

**ANSWER**:

The current admissions process for Thomas Jefferson is set forth in Regulation 3355.14, which is publically available and may be accessed at: https://go.boarddocs.com/vsba/fairfax/Board.nsf/files/9BHHQF4997CB/$file/P3355.pdf. The School Board further incorporates by reference its answer to Interrogatory No. 6 above.

## VERIFICATION OF INTERROGATORY ANSWERS

I, Jeremy Shughart, am employed as the Director of Admissions for the Thomas Jefferson High School of Science and Technology by the Fairfax County School Board. Based on reasonable inquiry, I believe that the foregoing answers to interrogatories are true and correct to the best of my knowledge, information, and belief, but I do not thereby certify that I have personal knowledge of the facts set forth in these answers.

I verify under penalty of perjury that the foregoing is true and correct.

Executed on August 9, 2021.

-16-

                          FAIRFAX COUNTY SCHOOL BOARD

Objections By:       /s/
          Stuart A. Raphael (VSB No. 30380)
          Sona Rewari (VSB No. 47327)
          HUNTON ANDREWS KURTH LLP
          2200 Pennsylvania Avenue, NW
          Washington, DC 20037
          Telephone: (202) 955-1500
          Facsimile: (202) 778-2201
          sraphael@HuntonAK.com
          srewari@HuntonAK.com

          *Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on August 9, 2021, I caused a copy of the foregoing to be delivered by electronic mail to the following counsel for Plaintiffs:

Erin E. Wilcox, *pro hac vice*
Christopher M. Kieser, *pro hac vice*
PACIFIC LEGAL FOUNDATION
930 G Street
Sacramento, California 95814
EWilcox@pacificlegal.org
CKieser@pacificlegal.org

Alison E. Somin, Esq.
PACIFIC LEGAL FOUNDATION
3100 Clarendon Blvd., Suite 610
Arlington, Virginia 22201
ASomin@pacificlegal.org

Glenn E. Roper, *pro hac vice*
PACIFIC LEGAL FOUNDATION
1745 Shea Center Dr., Suite 400
Highlands Ranch, Colorado 80129
GERoper@pacificlegal.org

By:    /s/
Sona Rewari (VSB No. 47327)
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Avenue, NW
Washington, DC 20037
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
srewari@HuntonAK.com