# Exhibit 24

1              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF VIRGINIA
2                 ALEXANDRIA DIVISION

3      ----------------------------
       COALITION FOR TJ,                  :
4
              Plaintiff,                  :
5
          -v-                             :              No.
6                                         :1:21-cv-00296-CMH-JFA
       FAIRFAX COUNTY SCHOOL              :
7      BOARD,                             :
8              Defendant.                 :
       ----------------------------

9

10

11     (b)(6) DEPOSITION OF FAIRFAX COUNTY SCHOOL BOARD
        BY AND THROUGH ITS DESIGNATED REPRESENTATIVE

12                 STELLA PEKARSKY

13           Wednesday, October 27, 2021

14                  9:05 a.m.

15

16

17

18

19

20     Job No.:  408658

21     Pages:  1 - 74

22     Reported by:  Paula Flint

1        30(b)(6) DEPOSITION OF FAIRFAX COUNTY SCHOOL

2   BOARD, by and through its designated

3   representative, STELLA PEKARSKY, conducted at the

4   law offices of:

5

6

7            HUNTON ANDREWS KURTH, LLP

8              8405 Greensboro Drive

9                 Suite 140

10            McLean, Virginia 22102

11              (703) 714-7400

12

13      Pursuant to agreement, before Paula Flint,

14   Notary Public of the Commonwealth of Virginia.

15

16

17

18

19

20

21

22

```
 1           A P P E A R A N C E S
 2    ON BEHALF OF PLAINTIFF:
 3           ERIN E. WILCOX, ESQUIRE
 4           PACIFIC LEGAL FOUNDATION
 5           555 Capitol Mall
 6           Suite 1290
 7           Sacramento, California 95814
 8           (916) 503-8986
 9               and
10           ALISON E. SOMIN, ESQUIRE
11           PACIFIC LEGAL FOUNDATION
12           3100 Clarendon Boulevard
13           Suite 610
14           Arlington, Virginia 22201
15           (202) 557-0202
16
17
18
19
20
21
22
```

```
1    A P P E A R A N C E S   C O N T I N U E D

2        ON BEHALF OF DEFENDANT:

3              SONA REWARI, ESQUIRE

4              DANIEL STEFANY, ESQUIRE

5              HUNTON ANDREWS KURTH, LLP

6              8405 Greensboro Drive

7              Suite 140

8              McLean, Virginia 22102

9              (703) 714-7400

10

11       ON BEHALF OF THE WITNESS:

12             JULIA B. JUDKINS, ESQUIRE

13             BANCROFT McGAVIN HORVATH & JUDKINS

14             9990 Fairfax Boulevard

15             Suite 400

16             Fairfax, Virginia 22030

17             (703) 385-1000

18

19                  *      *      *

20

21

22
```

```
1                    C O N T E N T S

2    EXAMINATION OF STELLA PEKARSKY                PAGE

3       Ms. Wilcox                                   7

4       Ms. Rewari                                  67

5

6

7                    E X H I B I T S

8              (Attached to transcript.)

9    PEKARSKY DEPOSITION EXHIBIT NO.               PAGE

10      EX.1      Plaintiff's Notice of Rule 30(b)(6)   10

11                Deposition of Defendant

12      EX.2      Email Communication, Bates Labeled    17

13                FCSB-TJ000021450 through

14                FCSB-TJ000021471

15      EX.3      October 6, 2020 Closed School Board   28

16                Work Session

17      EX.4      November 2020 Research and Proposal   38

18      EX.5      Fairfax County School Board Minutes,  42

19                December 7, 2020

20      EX.6      Fairfax County School Board Minutes,  50

21                December 17, 2020

22
```

1          E X H I B I T S   C O N T I N U E D

2                   (Attached to transcript.)

3     PEKARSKY DEPOSITION EXHIBIT NO.                         PAGE

4        EX.7       Email Communication, Bates Labeled    56

5                   FCSB-TJ000000415 and FCSB-TJ000000416

6        EX.8       TJ Admissions Merit Lottery Proposal, 58

7                   School Board Work Session 9/15/2020

8        EX.9       Document Binder                         68

9

10                       *      *      *

11

12

13

14

15

16

17

18

19

20

21

22

1        Q.      Did the board take any votes on this

2    proposal or this white paper?

3        A.      No.

4        Q.      Did the board direct staff to take any

5    actions related to this document?

6            MS. JUDKINS:  Direct whom?  I'm sorry.

7    I didn't hear you.

8        Q.      Did the board direct staff to take any

9    action related to this document?

10       A.      I do not recall, no.

11       Q.      In 2020 was the board presented with

12   any proposals to alter the TJ admissions process

13   prior to this document that was received in May?

14           MS. REWARI:  Objection, outside the

15   scope.

16       Q.      You can answer.

17       A.      Not that I know of.

18       Q.      Not that you know of?

19       A.      No.

20       Q.      You can set this aside.  I'm going to

21   move into September.

22           Did the board hold a work session on

1   September 15, 2020?

2          A.     Yes.

3          Q.     And was there a presentation at that

4   work session on a proposal to alter the TJ

5   admissions process?

6          A.     Yes.

7          Q.     And what are you referring to, to help

8   you answer this?

9          A.     I am looking at the -- under the

10  presentation, agendas and transcripts of the work

11  session.

12         Q.     Who made that presentation?

13         A.     That presentation was made by staff,

14  in particular Dr. Brabrand, Mr. Smith and

15  Mr. Shughart.

16         Q.     Did the school board ask the

17  superintendent to create that proposal?

18         A.     Not to my knowledge, no.

19         Q.     Did the superintendent present it on

20  his own initiative?

21                MS. REWARI:  Objection, lack of

22  foundation, calls for speculation.

1        Q.      You can answer if you know.

2        A.      As far as I know, yes.

3        Q.      And was the proposal that was

4    presented, was that the merit lottery proposal?

5        A.      Yes.

6        Q.      So let's move to October.  Moving

7    right along.

8                Did the board hold a work session on

9    October 6, 2020?

10       A.      Yes.

11       Q.      And are you referring to any documents

12   to help you answer that question?

13       A.      Yes.

14       Q.      Which ones?

15       A.      I am looking at the agendas, minutes

16   and transcripts and presentations that are in my

17   binder.

18       Q.      Were the TJ admission changes

19   discussed at that work session?

20       A.      Yes.

21       Q.      And what was discussed at that work

22   session, what changes in particular?

1       A.      Staff presented the revised merit

2   lottery proposal and addressed changes made from

3   the original proposal on September 15, 2020.

4       Q.      Was public comment allowed at that

5   work session?

6       A.      No.

7               MS. JUDKINS:  Objection to the form.

8               Go ahead.

9       A.      No.  Public comment does not happen in

10  work sessions.

11      Q.      Is that a comment of all work

12  sessions, that comment is not allowed at all work

13  sessions?

14              MS. JUDKINS:  Just objection to the

15  form, allowed.

16      A.      There is no public comment at work

17  sessions.

18      Q.      Did the board take a vote to eliminate

19  the TJ admissions test at the September 6 work

20  session?

21      A.      Yes.

22      Q.      And did the board hear any public

1    comment on the decision to eliminate the exam at

2    that work session?

3              MS. REWARI:  Objection, vague.

4         Q.    You can answer.

5         A.    The board had heard lots of public

6    comment regarding TJ and the admissions tests and

7    the policy and process through many different

8    avenues, not at this work session.

9         Q.    Did the board instruct staff to

10   undertake public engagement on the decision to

11   eliminate the test after that work session

12   finished?

13             MS. REWARI:  Objection, vague.  Did

14   the board do it after or did staff do it after?

15   I'm confused by your question.

16             MS. WILCOX:  Sure.

17   BY MS. WILCOX:

18        Q.    Did the board instruct staff that

19   after the work session was over to go out and

20   undertake public comment on the decision to

21   eliminate the TJ admissions test?

22        A.    Can you clarify the question as to

1    when you are asking me about?

2         Q.    Sure.  Following the work session to

3    eliminate the test.  So after that time.

4         A.    Okay.  There were no motions to direct

5    the superintendent to do that at that meeting.

6         Q.    Did the board consider eliminating the

7    TJ admissions exam to have the potential to be

8    controversial among the community?

9              MS. REWARI:  Objection, outside the

10   scope, calls for individual understandings.  And

11   so it's outside the scope.  Any answer she gives

12   would be in her individual capacity and not by

13   the board.

14             MS. JUDKINS:  Object to the form,

15   calls for an opinion.

16             Go ahead.

17        A.    The board never took any position on

18   the controversial nature of any changes.

19        Q.    Did the board -- I know the board --

20   you've testified the board did not take public

21   comment at the work session.  Did the board hear

22   public comment on eliminating the exam outside of

1    that board session?

2            MS. REWARI:  Objection, asked and

3    answered and also outside the scope, to the

4    extent it asks for individual board member

5    accounts.  So any testimony she gives will be in

6    her individual capacity, not bound by the board.

7        A.    Restate the question.

8        Q.    You testified that public comment did

9    not occur at the October 6 work session.  Did the

10   board hear public comment on eliminating the TJ

11   test outside of that work session?

12       A.    I cannot --

13           MS. REWARI:  Object to the form,

14   outside the scope.

15       A.    I cannot speak on behalf of the board

16   on this.  I can say that the board hears public

17   comment at our regular meetings.  We hear regular

18   comment through emails that are received, through

19   town halls, individually through, you know,

20   meetings with constituents.

21       Q.    But the only time that the full board

22   would hear constituent feedback would be at a

1    board meeting.  Is that correct?

2              MS. REWARI:  Object to the form.

3        A.    No.  The board as whole often gets

4    emails from people that are sent to the entire

5    board.

6        Q.    Okay.

7              (Exhibit 3 marked for identification

8    and attached to the transcript.)

9    BY MS. WILCOX:

10       Q.    Ms. Pekarsky, was there a closed board

11   work session on October 6, 2020?

12       A.    I would have to check.  Yes.

13       Q.    And do you recognize the document

14   that's been marked as Pekarsky 3?

15       A.    I don't recall this exact document.

16   It says at the top that it came from the closed

17   session on October 6.

18       Q.    Do you know who presented this to the

19   board?

20       A.    I do not recall.

21       Q.    Did the board request the information

22   that was contained in this document?

1        A.    Let me look at my binder.  To the best

2    of my knowledge, the board didn't have an actual

3    motion to request this approach.

4        Q.    Okay.  Did the board vote or take a

5    vote on this approach that's presented here?

6            MS. REWARI:  Objection.  You're

7    talking about now on Exhibit 3?

8            MS. WILCOX:  Yes.

9            MS. REWARI:  You're asking if there

10   was a vote on October 6 or any time after that on

11   this document.  Is that right?

12           MS. WILCOX:  Yes.  I'm asking if there

13   was a vote on this document that's Pekarsky 3.

14       A.    To the best of my knowledge we didn't

15   take an actual vote on this approach.

16       Q.    Did the board take any other actions

17   on this document that's marked as Pekarsky 3?

18           MS. REWARI:  Objection, vague.

19       A.    I need you to restate that.

20       Q.    You said the board did not take a vote

21   on this document.  Is that correct?

22       A.    An official vote.

1      Q.     Did the board take an unofficial vote

2   on this document?

3            MS. JUDKINS:  Objection to the form.

4      A.     This was just a hybrid lottery

5   approach that was presented to the board and the

6   board had discussions.

7      Q.     Besides discussion did the board take

8   any other action on this document?

9            MS. REWARI:  Objection, vague.

10      Q.     You can answer.

11      A.     I believe I answered.  We didn't take

12   any motions on this document or this approach.

13      Q.     Can I draw your attention to the

14   section on page one that's entitled evaluation

15   elements?  Do you see what I'm talking about

16   there?

17      A.     Yes.

18      Q.     What are the -- let me rephrase that.

19            Is it fair to characterize the

20   evaluation elements as a scoring rubric proposal?

21            MS. JUDKINS:  Objection to the form,

22   the document speaks for itself.

1          MS. REWARI:  I'm going to object it's

2    outside the scope.  She already said they didn't

3    vote on this.  So this is outside the scope.  Any

4    testimony she gives is going to be in her

5    individual capacity.

6          MS. JUDKINS:  I want to make an

7    additional objection that there's been lack of

8    foundation.  Who prepared this document?  As

9    she -- you've established that she has knowledge

10   specifically of what that means.  All you've

11   established is that she can say that pursuant

12   to -- that that document was at the meeting.  But

13   if she's going to be testifying in her individual

14   capacity and she didn't prepare the document and

15   they didn't vote on it as an official document,

16   what it means is just speculative at this point.

17   But maybe you can clarify that.

18          MS. WILCOX:  All right.  Let me just

19   move past that but with one more question, that

20   you should be able to testify as a board member,

21   I assume.

22   BY MS. WILCOX:

1      Q.    Had the board previously been

2   presented with evaluation elements similar to

3   what's in Pekarsky 3 here?

4           MS. REWARI:  Objection to the form,

5   vague.

6      A.    You're going to have to restate it.

7   I'm not exactly sure what you're asking.

8      Q.    Is this the first time that the board

9   had been presented with a proposal that contained

10  evaluation elements?

11          MS. REWARI:  Object to the form,

12  outside the scope and also vague.  It's not

13  limited in time.  It's not clear what you're

14  asking.

15          MS. WILCOX:  I'm limit my question to

16  the fall of 2020.

17          MS. REWARI:  I still object to

18  vagueness and outside the scope.

19          But you can answer if you understand

20  the question and any testimony you give will be

21  individual.

22          MS. WILCOX:  This relates back to

1  proposals to change the TJ admissions process in

2  2020.  That's within the scope.

3           MS. REWARI:  Which topic of proposal.

4  There's decision.

5           MS. WILCOX:  Decision, this is part of

6  the decision.

7           MS. REWARI:  It's -- the topics for

8  decision, you're asking if there was a proposal.

9  So she can answer if she can answer individually,

10  if she has knowledge to do that.

11      A.    I'm not exactly sure what I'm being

12  asked.  I can't answer that.

13      Q.    In this document there's a section

14  entitled evaluation elements.  Yes; right?

15      A.    Yes.

16      Q.    And this document was presented to the

17  board at a closed work session in October,

18  correct?

19      A.    That's what it says at the top of the

20  page.

21      Q.    Had the board been presented with

22  evaluation and elements previously in 2020?

1           MS. REWARI:  Object to the form, vague

2     and outside the scope of her deposition topics.

3           A.    I don't recall.  I don't recall.

4           Q.    Okay.  You can put that aside.

5                 Did the board hold a regular meeting

6     on October 8, 2020?

7           A.    Yes.

8           Q.    Were the changes to the TJ admissions

9     process discussed at that meeting?

10          A.    Yes.

11          Q.    And what are you consulting to answer

12    that question?

13          A.    I'm looking at my binder with the

14    meeting minutes, transcripts and presentations.

15          Q.    Did the board take public comments on

16    the TJ admissions changes at that meeting?

17                MS. REWARI:  Objection to form.

18          A.    The board takes public comments at all

19    regular meetings.

20          Q.    So that's a yes to my question?

21          A.    Correct.

22          Q.    At this meeting on October 8, were

1    there motions to direct the superintendent to

2    develop and implement a stakeholder engagement

3    plan?

4          A.    Yes.

5          Q.    What was the purpose of the

6    stakeholder engagement plan?

7                MS. REWARI:  Object to the form,

8    outside the scope.

9          A.    I can read the motion.

10   Ms. Sizemore-Heizer moved and Ms. Tholen

11   seconded, to direct the superintendent to develop

12   and implement a stakeholder engagement plan

13   regarding TJ admissions prior to bringing the

14   updated TJ plan to the board in November.  The

15   plan should allow for more thorough community

16   input and dialog on TJ admissions.  The

17   stakeholder engagement can include public

18   hearings, interviews, panel and focus group

19   discussions and other forms of collaborative

20   discourse.

21         Q.    Did that motion pass?

22                MS. JUDKINS:  I'm just going to object

1    to the extent it's a matter of public record.

2    She can go through the record.  I'm not telling

3    her not to answer.

4          A.    Yes, this motion failed.

5          Q.    The motion failed.  Why did the motion

6    fail?

7                MS. REWARI:  Object to the form,

8    outside the scope.  The votes speak for

9    themselves.  She can't address why individual

10   board members voted the way that they did.

11         Q.    Was there discussion at the meeting

12   about that motion?

13         A.    There's discussion on motions at our

14   meetings, yes.

15         Q.    Do you recall if there was discussion

16   on that specific motion?

17         A.    Yes.

18         Q.    Did the motion fail because of

19   concerns about extending the timeline of the

20   TJ admissions process?

21                MS. REWARI:  Object to the form,

22   outside the scope.  It's asking for individual

1    board members' motivations for their votes.

2         A.    Yeah.  The board didn't take a

3    position as to why this motion failed.  It was

4    presented and it failed.  0-7-5 abstentions.

5         Q.    Did the board consider the TJ

6    admissions changes at any other regular board

7    meeting between October 8 and December 17?

8              MS. JUDKINS:  Again, I will object

9    only to the extent it's a matter of public

10   record.  She can take all the time she needs to

11   go through these documents to confirm that,

12   whether they did or not.

13        Q.    Please.

14        A.    Sure.  Can you restate the dates

15   again?

16        Q.    October 8 and December 17.

17        A.    Between that time?

18        Q.    Yeah.

19        A.    So restate the question again, please.

20        Q.    Sure.  Were there -- did the board

21   consider TJ admissions changes at any other

22   regular board meetings between October 8 and

1    December 17?

2         A.    Not admissions changes, no.

3         Q.    That's what I thought.  I just wanted

4    to make sure we hadn't missed anything.

5         A.    Can I go back to that question?

6         Q.    Sure.

7         A.    I need to add to that.  So we did have

8    a motion on the October 22 meeting by Ms. Derenak

9    Kaufax to address some of the systemic issues

10   that impact TJ's admission.  So there was this

11   discussion.

12        Q.    What was the result of that motion?

13             MS. JUDKINS:  Objection.  Matter of

14   public record.

15        A.    That motion passed, 11 to zero, zero

16   abstentions.

17        Q.    What tab are you looking at there?

18        A.    Actually, I'm sorry.  Four B.

19        Q.    Great, thank you.

20             (Exhibit 4 marked for identification

21    and attached to the transcript.)

22   BY MS. WILCOX:

1      Q.    I'm going to ask you general questions

2   about this.  So not detailed questions about the

3   whole thing.  Just let me know when you're ready

4   for that.

5      A.    Okay.  Actually, before we do this can

6   we just take a quick break?

7      Q.    Yeah, absolutely.

8            (A recess was taken.)

9   BY MS. WILCOX:

10     Q.    If you could just take a minute to

11  look over this.  Like I said, I'm going to ask

12  you some general questions, no specific details.

13     A.    Okay.

14     Q.    I take that back.  I will ask you

15  about page 25, which is Appendix B, if you want

16  to take a special look at that.

17     A.    Okay.  (Reviewing.)  Okay.

18     Q.    Do you recognize this document that's

19  been marked as Pekarsky 4?

20     A.    Yes.

21     Q.    What is it?

22     A.    This was a document that was shared

1  with the board by Dr. Brabrand and staff.

2       Q.    Did the school board ask the staff to

3  create this white paper -- or this document?

4       A.    To my knowledge, there was no motion

5  that directed the superintendent to bring this

6  document to us, no.

7       Q.    Did the board discuss this white paper

8  at a board meeting?

9       A.    The board as a body didn't, to my

10  knowledge, discuss specifically this paper.  I

11  don't recall that, no.

12       Q.    Was this document presented to the

13  board?  You know that's correct?

14       A.    This document was -- this document

15  was -- this document was made publicly available

16  as part of our agenda for the December 7 meeting.

17       Q.    And who created this document?

18       A.    To the best of my knowledge, staff.

19  Staff provided this document.

20       Q.    Did the board have any input into this

21  document, to your knowledge?

22       A.    This was a document presented to us

1    from staff.

2         Q.    And can you turn to Appendix B?

3    That's going to start on page 25.  And what is

4    Appendix B titled?

5              MS. JUDKINS:  Objection to the form,

6    it speaks for itself.

7              Go ahead.

8         Q.    If you could read the title --

9         A.    Details on modeling.

10        Q.    And is it accurate to say that

11   Appendix B contains demographic modeling within

12   the regions that are proposed in this document or

13   that are discussed in this document?  Excuse me.

14             MS. REWARI:  Object to form, lack of

15   foundation by -- the topics are different than is

16   on the modeling topic.

17             MS. JUDKINS:  And I'll just object to

18   the form and state the document speaks for

19   itself.

20             MS. WILCOX:  Sure.

21             MS. JUDKINS:  Go ahead.

22        A.    Yeah.  You would have do reword that

1    for me.

2         Q.    Sure.  Is it accurate to say that

3    Appendix B contains demographic modeling?

4              MS. REWARI:  Object to the form, lack

5    of foundation, outside the scope of this

6    witness's designation.

7         A.    This has -- this part of the

8    presentation, entitled details on modeling, has

9    two tables that show two models.

10        Q.    Did the board discuss this modeling

11   that's presented in this appendix during the

12   meeting where this paper was presented?

13        A.    The board didn't take any official

14   position on either one of these models.

15        Q.    Okay.  You can set that aside.  Did

16   the board hold a work session on December 7,

17   2020?

18        A.    We did.

19             (Exhibit 5 marked for identification

20    and attached to the transcript.)

21   BY MS. WILCOX:

22        Q.    If you could just review this.  I know

1    you already have a copy, but I'm going to ask you

2    off of this one so we're on the same page.

3          A.    Sure.  (Reviewing.)  Okay.

4          Q.    I want to draw your attention to

5    page two, item 2.02.  Down at the bottom.

6          A.    Okay.

7          Q.    And the third bullet where it says,

8    Staff presented a new hybrid merit lottery option

9    and the new holistic review option.  And I just

10   wanted to ask, is this work session the first

11   time that the board had been presented with the

12   holistic review option?

13          MS. REWARI:  Object to the form.

14          A.    I need to better understand what you

15   mean by holistic review option.

16          Q.    Okay.  At this meeting did

17   Superintendent Brabrand present two options for

18   the TJ admissions process?

19          A.    Staff did present two options, yes.

20          Q.    What were those two options?

21          A.    I would have to go through my papers

22   to -- so the superintendent presented two

1    approaches.  One that he named the hybrid merit

2    lottery revised, and another one he named the

3    holistic review.  And those can be found in the

4    official agenda attachments.

5         Q.    Great.  And was that presentation the

6    first time that the board had been made aware of

7    the holistic review plan?

8              MS. REWARI:  Again, object to the

9    form, to the extent it's asking for when

10   individual board meetings learned of the holistic

11   option.  She's -- the board can't, as a body,

12   answer that question.  She can answer it in her

13   individual capacity but it's not a question

14   that --

15             MS. WILCOX:  I can rephrase.

16   BY MS. WILCOX:

17        Q.    Was this the first time the holistic

18   review plan had been presented to the board as a

19   body?

20             MS. REWARI:  Object to the form.  The

21   document speaks for itself.  It's got different

22   dates on it.

1          MS. JUDKINS:  The only objection I

2    make is, if it -- the record of what's presented

3    to the board is public, and it's a large record.

4    So if there's any other documentation in there

5    that says it was and she's just not able to

6    recollect individually, individually I reserve

7    that objection.

8          A.    So to the best of my knowledge this

9    was the first time that this approach was brought

10   to the board in a work session.

11         Q.    Does the board release documents like

12   this to the public prior to work sessions or

13   school board meetings?

14         MS. REWARI:  Object to the form,

15   outside the scope.

16         A.    Can you restate that?

17         Q.    Sure.  I'm wondering, is it a practice

18   of the board to make documents that it will be

19   considering at meetings public?

20         MS. REWARI:  Object to the form,

21   outside the scope of her topics.

22         A.    All documents are public, publicly

1    available on our website.

2        Q.    Okay.  So was this presentation that

3    presents the two admissions policy options, was

4    that released to the public ahead of this

5    meeting, this school board meeting?

6        A.    I don't know.  As a practice all of

7    our materials are publicly available while we're

8    in a meeting.

9        Q.    Did the board hear any public comments

10   on the holistic review plan at the December 7

11   work session?

12       A.    No.

13       Q.    Did the board hear any public comment

14   on the hybrid merit lottery plan at the

15   December 7 work session?

16       A.    Work sessions do not have public

17   comment.

18       Q.    And then if you could look at the

19   second bullet under 2.02, where it says staff

20   presented previous proposals and two admissions

21   options for board action at the December 17, 2020

22   regular meeting, including stakeholder engagement

1    efforts.   I wanted to ask you what stakeholder

2    engagement efforts were implemented, if any?

3             MS. REWARI:  Object to the form,

4    outside the scope.

5             MS. JUDKINS:  Yeah, I'll just --

6             MS. REWARI:  And also vague.

7             MS. JUDKINS:  I'll just object to the

8    extent that it would -- this information would be

9    available publicly through minutes and/or actual

10   board meeting, recordings of actual board

11   meetings.

12            Go ahead.

13       A.    I don't have any specific knowledge to

14   add to this right now.  Like I said, the board

15   hears public comment in numerous ways to include

16   our public meetings, through emails, individual

17   town halls, meetings with constituents.

18       Q.    Did the board engage in any specific

19   stakeholder engagement efforts following this

20   December 7 work session?

21            MS. REWARI:  Object to the form, vague

22   and outside the scope.

1        A.      We had a public meeting on December 17

2    where there was public comment.

3        Q.      Great.  Well, I was going to ask you

4    about that December 17 meeting next.

5                So the school board did have a regular

6    meeting on December 17.  Is that correct?

7        A.      Yes.

8        Q.      And did that meeting include motions

9    related to changes to the TJ admissions process?

10       A.      Yes.

11       Q.      Does the board have a policy for how

12   far in advance of a meeting motions should be

13   posted?

14               MS. JUDKINS:  Objection to the form.

15   That's a matter of public record.

16               MS. REWARI:  I object to the form.

17   This is outside the scope of any of the topics

18   for which she's been designated.

19       Q.      You can answer if you're able.

20       A.      The board has a governance manual.

21       Q.      Does it cover that topic?

22       A.      I can't answer that right now.  I

1    don't have that.

2         Q.    Are members of the public able to see

3    what motions are posted in advance of a meeting?

4              MS. REWARI:  Objection to the form,

5    calls for speculation and it's also outside her

6    topics.

7              MS. JUDKINS:  Do you mean what motions

8    are going to be made at a meeting?

9              MS. WILCOX:  Uh-huh.  I do, yes.

10             MS. JUDKINS:  It's a matter of public

11   record and law what has to be posted in advance

12   of a meeting in Virginia.

13             MS. WILCOX:  Sure.

14             MS. JUDKINS:  So to the extent she

15   knows what has to be posted beyond what is

16   available to the public, she can answer it.  But

17   it's asking a question that it doesn't allow any

18   discretion on the part of board members as to

19   what to post in advance of a meeting.

20             MS. WILCOX:  Okay.  That's fine.

21             MS. JUDKINS:  And anybody can look it

22   up.

1        Go ahead.

2    A.    Can you repeat it?

3    Q.    After that I'm not sure I remember the

4    question.

5        MS. WILCOX:  Can you read the question

6    back?

7        (The Reporter read from the record as

8    follows:  "Q.  Are members of the public able to

9    see what motions are posted in advance of a

10   meeting?")

11 BY MS. WILCOX:

12   Q.    Are members of the public able to see

13   what motions are -- have been posted in advance

14   of a meeting?

15       MS. REWARI:  Object to the form.

16   Outside her topics, lacks foundation and also

17   calls for speculation as to what the public can

18   see and can't see.

19   A.    So all meetings are open to the public

20   and under Robert's Rules, motions can be brought

21   at any time during a meeting.

22       (Exhibit 6 marked for identification

1    and attached to the transcript.)

2   BY MS. WILCOX:

3        Q.    Again, I know you have a copy of this

4   but it's just the one I'm going to work off of.

5        A.    Sure.

6        Q.    Do you recognize this document?

7        A.    Yes.

8        Q.    What is it?

9        A.    These are the minutes from our regular

10   meeting on December 17, 2020.

11        Q.    I would like to ask you about a motion

12   that is on page four.  Page numbers are at the

13   top.

14        A.    Okay.

15        Q.    Middle of the page and it says

16   Ms. Tholen moved, Ms. Pekarsky seconded.  If you

17   could just review that quickly.  Not quickly.

18   Take your time.

19        A.    (Reviewing.)

20        Q.    So I'm looking at what I believe is

21   the second sentence that begins, A diverse

22   student body that includes a wide variety of

1    backgrounds.  Do you see that sentence?

2        A.    Yes.

3        Q.    First let me ask, did this motion

4    pass?

5        A.    This motion passed.

6        Q.    And the board speaks through its

7    motions.  Is that accurate?  Or through its

8    votes.

9        A.    Correct.

10            MS. REWARI:  Objection, calls for a

11   legal conclusion.

12       Q.    So where it says a diverse student

13   body, does that include racial diversity?

14       A.    The board did not define through its

15   motion what diverse means.

16       Q.    Does that include racial diversity?

17            MS. REWARI:  Object, asked and

18   answered.  She already answered on behalf of the

19   board.

20       Q.    Was it the board's position that TJ

21   was not racially diverse enough before the 2020

22   admissions changes?

1          MS. REWARI:  Object to the form.

2      A.    The board never took a position or any

3   motions to that effect.

4      Q.    Is it the board's position that TJ was

5   not representative of Fairfax County Public

6   Schools?

7          MS. REWARI:  Object to the form.

8   Outside the scope of her topics.  You're asking

9   her if it's the board's position today?

10          MS. WILCOX:  Prior to the 2020

11   admissions changes.

12          MS. REWARI:  Can you ask her that way?

13 BY MS. WILCOX:

14      Q.    Prior to the 2020 admissions changes,

15   was it the board's position that TJ did not

16   represent -- was not representative of Fairfax

17   County Public Schools?

18      A.    The board didn't take a position on

19   that.

20      Q.    And if you could turn to page six.  I

21   believe at the top.  Well, it's sort of in the

22   middle.

1          Do you see the paragraph where it

2     says, The board discussed that the percentage of

3     individual middle schools reflect their

4     percentage of FCPS population increase diversity?

5     Do you see that paragraph?

6          A.    Yes.

7          Q.    Read that to yourself.

8          A.    (Reviewing.)  Okay.

9          Q.    In the board's discussion on that

10    topic that's described here, did diversity mean

11    racial diversity?

12              MS. JUDKINS:  Objection to the form.

13              MS. REWARI:  Object to the form.

14              MS. JUDKINS:  The record speaks for

15    itself.

16              Go ahead.

17         A.    Yeah, the discussion was public

18    record.  So that is in the minutes.  And the

19    board didn't take a position as to what the

20    definition of diversity is.

21         Q.    During this discussion was the board

22    aware of the racial composition of admitted

1    students from each middle school?

2              MS. REWARI:  Object to the form to the

3    extent you're asking for individual awareness of

4    board members, it's outside the scope of her

5    topics and also lacks foundation.

6         A.    To the best of my knowledge, there was

7    no information like that presented on this day.

8         Q.    We're done with that exhibit here.  We

9    can set that aside.  Let's back up just a little

10   bit.

11             Did the board instruct Dr. Brabrand

12   and his staff to initiate changes to the TJ

13   admissions process in 2020?

14        A.    The board never took -- the board

15   never had a motion to direct the superintendent

16   to do that, to my knowledge.

17        Q.    Once that process began did the board

18   communicate a deadline to staff on when the

19   changes to the TJ admissions process should be

20   complete by?

21        A.    I would have to look.  So restate the

22   question again.

1          MS. WILCOX:  Would you read back the

2     question?

3              (The Reporter read from the record as

4     follows:  "Q.  Once that process began did the

5     board communicate a deadline to staff on when the

6     changes to the TJ admissions process should be

7     complete by?")

8              MS. REWARI:  I'm going to object to

9     the question to the extent it's asking for any

10    individual direction from individual board

11    members.  She can answer if there's -- if the

12    board took action as a body.

13         A.   I do not believe the board took action

14    as a body, to my knowledge.

15         Q.   Okay, great.

16              (Exhibit 7 marked for identification

17     and attached to the transcript.)

18    BY MS. WILCOX:

19         Q.   You can look this over and let me know

20     when you're ready.

21         A.   (Reviewing.)  Okay.

22         Q.   So this email was forwarded up at the

1          MS. WILCOX:  Sorry.  Which racial

2    group looses seats under the merit lottery.

3          MS. JUDKINS:  Object to the form of

4    the question.

5          MS. REWARI:  I'm also going to object,

6    lack of foundation, calls for speculation and

7    it's outside the scope of her topics.

8       A.    The board didn't analyze the pie

9    charts and have positions on that question.

10      Q.    So these pie charts were not

11   considered by the board?

12          MS. JUDKINS:  Objection.

13          MS. REWARI:  Objection,

14   mischaracterizes her testimony.

15          MS. WILCOX:  So I'll ask again.

16   BY MS. WILCOX:

17      Q.    Was this part of the presentation

18   considered by the board when it was deciding

19   whether to change the TJ admissions process in

20   2020?

21          MS. REWARI:  Object to the form.  And

22   this is asking for individual board members'

1   consideration of individual outcomes.  She's

2   already testified as to what the board was

3   presented with.

4       A.    These were presented to us and there

5   were no positions taken on these pie charts or

6   this presentation.

7       Q.    Did the board request to see -- after

8   being presented with this proposal by staff, did

9   the board request any further modeling on

10  demographic impacts of the proposal that was

11  given?

12          MS. REWARI:  Object to the form.

13      A.    State that again.

14      Q.    Sure.  After viewing this proposal

15  from staff in September, did the board request to

16  see any further demographic modeling related to

17  the proposal?

18      A.    I do not recall any motions to that

19  effect, no.

20      Q.    Are motions the only way that the

21  board as a body would instruct staff to carry out

22  further actions related to a proposal?

1              MS. REWARI:  Object to the form.

2        A.    Again?

3        Q.    If the board were to ask for more

4   information, say, following -- after seeing this

5   proposal in September, is a motion the only way

6   that they would instruct staff to do that?

7              MS. REWARI:  Object to the form,

8   vague, board and they.  So that question is

9   vague.

10       A.    So the board directs the

11  superintendent through our motions.  So that's

12  how we direct the superintendent.

13       Q.    Okay.  And sorry.  Just to confirm,

14  the board did not pass any motions to direct the

15  superintendent to do further modeling after

16  reviewing this presentation?  I believe you said

17  that is true.

18             MS. JUDKINS:  And I'll just object.

19  If they had it would be a matter of public

20  record.  Are you asking at this particular

21  meeting?

22             MS. WILCOX:  Yes.

1          MS. JUDKINS:  That might be easier.

2          MS. WILCOX:  Yes, at this meeting.

3     A.    This was September 15, right?

4     Q.    Yes, it was.

5          MS. REWARI:  While she's looking, I'm

6     just going to object to the extent that you're

7     asking her to recount what is in the recorded

8     meeting that's public and you have a transcript

9     in this binder.  So she can look at it.

10    Q.    If you don't recall off the top of

11    your head I'm fine with you not looking any

12    further.

13    A.    Yeah.  I don't recall off the top of

14    my head, no.

15    Q.    That's good enough.  We're done with

16    that presentation.  You can set that aside.

17    A.    Okay.

18    Q.    I think we've got about ten more

19    minutes and then we'll be done after that.

20    A.    Okay.

21    Q.    So a couple more questions, or a few

22    more than that.

1              In October of 2020, was the school

2     board required to submit a report to the state

3     about diversity, equity and inclusion efforts at

4     TJ?

5          A.    Yes.

6          Q.    Who led the drafting of that report?

7              MS. REWARI:  Object to the form.

8          A.    That report was a requirement of

9     staff.  So that would be staff.

10         Q.    Did the school board contribute to

11    that report?

12             MS. REWARI:  Object to the form.

13         A.    The school board never took any

14    position on -- any formal position, and to the

15    best of my knowledge we never saw that plan that

16    was submitted.

17         Q.    Okay.  Was it the board's

18    understanding that that reporting requirement

19    would occur every year moving forward?

20             MS. REWARI:  Object to the form to the

21    extent it's asking for any individual board

22    member's understanding.

1      A.     The board didn't take a position on

2   the plan so I can't speak to understanding it.

3      Q.     And was it the board's understanding

4   that the reporting requirements necessitated the

5   change to the TJ admissions process?

6          MS. REWARI:  Object to the form to the

7   extent it's asking for individual board members'

8   understanding.

9      A.     The board never took any position on

10  understanding.

11     Q.     In the fall of 2020, was the board

12  aware of potential state legislation that would

13  have given the state control over TJ admissions?

14         MS. REWARI:  Object to the form, lack

15  of foundation.

16     A.     Restate that.

17     Q.     Sure.  In the fall of 2020 was the

18  school board aware of potential state legislation

19  that would have given the state control or

20  influence over TJ admissions?

21         MS. REWARI:  Object to the form,

22  vague.

1          ACKNOWLEDGMENT OF DEPONENT

2

3          I, STELLA PEKARSKY, do hereby

4    acknowledge that I have read and examined the

5    foregoing testimony, and the same is a true,

6    correct and complete transcription of the

7    testimony given by me, and any corrections appear

8    on the attached errata sheet signed by me.

9

10   _____    _____

11      (Date)                      (Signature)

12

13

14

15

16

17

18

19

20

21

22

1    CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC

2

3            I, Paula Flint, Certified Court

4    Reporter and Notary Public, the officer before

5    whom the foregoing deposition was taken, do

6    hereby certify that the foregoing transcript is a

7    true and correct record of the testimony given;

8    that said testimony was taken by me

9    stenographically and thereafter reduced to

10   typewriting under my supervision; that reading

11   and signing was requested; and that I am neither

12   counsel for, related to, nor employed by any of

13   the parties to this case and have no interest,

14   financial or otherwise, in its outcome.

15            IN WITNESS WHEREOF, I have hereunto

16   set my hand and affixed by notarial seal this

17   2nd day of November 2021.

18   My commission expires January 31, 2023.

19   Notary Registration Number:  277127

20

21

22