# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

| | |
|---|---|
| COALITION FOR TJ, | No. 1:21-cv-00296-CMH-JFA |
| Plaintiff, | |
| v. | |
| FAIRFAX COUNTY SCHOOL BOARD, | |
| Defendant. | |

**BRIEF IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR STAY PENDING APPEAL**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

ARGUMENT ............................................................................................................................1

    I.    Defendant Has Not Made a Strong Showing That It Is
        Likely to Succeed on the Merits ................................................................................2

    II.   Defendant Will Not Be Irreparably Injured Absent a Stay Pending Appeal ...............4

    III.  A Stay Will Substantially Injure Plaintiff ...................................................................6

    IV.  Denying the Stay Serves the Public Interest ..............................................................8

CONCLUSION ........................................................................................................................10

CERTIFICATE OF SERVICE ................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Adarand Constructors v. Pena*,
  515 U.S. 211 (1995) ..................................................................................................8

*Am. Fed'n of Teachers-W. Virginia, AFL-CIO v. Kanawha Cty. Bd. of Educ.*,
  592 F. Supp. 2d 883 (S.D. W. Va. 2009) ..................................................................9

*Ass'n for Educ. Fairness v. Montgomery Cty. Bd. of Educ.*,
  No. 8:20-02540-PX, 2021 WL 4197458 (D. Md. Sept. 15, 2021) ............................3

*Elrod v. Burns*,
  427 U.S. 347 (1976) ..................................................................................................7

*Farkas v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
  861 F. Supp. 2d 716 (E.D. Va. 2012) .......................................................................2

*Giovani Carandola, Ltd. v. Bason*,
  303 F.3d 507 (4th Cir. 2002) ................................................................................ 8-9

*Grutter v. Bollinger*,
  539 U.S. 306 (2003) ..................................................................................................3

*Hayden v. Cty. of Nassau*,
  180 F.3d 42 (2d Cir. 1999) ........................................................................................3

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ..................................................................................................2

*Legend Night Club v. Miller*,
  637 F.3d 291 (4th Cir. 2011) ....................................................................................8

*Ne. Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville*,
  508 U.S. 656 (1993) ..................................................................................................8

*Newsom ex rel. Newsom v. Abemarle Cty. Sch. Bd.*,
  354 F.3d 249 (4th Cir. 2003) ....................................................................................8

*Nken v. Holder*,
  556 U.S. 418 (2009) ..............................................................................................1, 4

*North Carolina State Conference of NAACP v. McCrory*,
  831 F.3d 204 (4th Cir. 2016) ................................................................................ 2-4

*Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*,
  890 F. Supp. 2d 688 (S.D. W. Va. 2012) ..................................................................2

*Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*,
    551 U.S. 701 (2007) ................................................................................................ 3, 7-8

*Pers. Adm'r of Massachusetts v. Feeney*,
    442 U.S. 256 (1979) ..........................................................................................................3

*Ross v. Meese*,
    818 F.2d 1132 (4th Cir. 1987) ..........................................................................................7

*Rothe Dev., Inc. v. U.S. Dep't of Def.*,
    836 F.3d 57 (D.C. Cir. 2016) ............................................................................................3

*Sampson v. Murray*,
    415 U.S. 61 (1974) ............................................................................................................4

*Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*,
    713 F.3d 175 (4th Cir. 2013) ............................................................................................7

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ..............................................................................................................1

## Other Authorities

FCPS, TJHSST Offers Admission to 550 Students; Broadens Access to Students
    Who Have an Aptitude for STEM, June 23, 2021,
    https://www.fcps.edu/news/tjhsst-offers-admission-550-students-broadens-
    access-students-who-have-aptitude-
    stem#:~:text=Thomas%20Jefferson%20High%20School%20for,for%20the%
    20Class%20of%202025 ......................................................................................................6

Six months ago, during a hearing on Plaintiff Coalition for TJ's second motion for a preliminary injunction to halt an admissions process that has now been ruled unconstitutional, this Court put Defendant Fairfax County School Board "on notice" that "we're trying this case, and we don't know what the outcome is going to be yet, so they've got to be prepared …." Transcript of Motions Hearing, Sept. 17, 2021, at 7:15-18. On February 25, 2022, this Court issued its ruling, holding that the current admissions process for Thomas Jefferson High School for Science and Technology violates Asian-American applicants' right to equal protection.

Instead of preparing for that outcome as instructed, Defendant now asks this Court to stay its order enjoining the use of the unconstitutional admissions process pending appeal to the Fourth Circuit. In support of such an extraordinary request, Defendant asserts an incorrect standard for likelihood of success on the merits and fails to show that any of the equities weigh in its favor. Plaintiff's members' children have already endured one admissions cycle under the unconstitutional admissions policy that discriminates against Asian-American students and another class is currently awaiting evaluation. They should wait no longer for the relief already ordered by this Court. Defendant's motion should be denied.

## ARGUMENT

A motion to place a court's careful and well-reasoned finding of a constitutional violation on indefinite hold pending appeal is an extraordinary request that seeks an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citation omitted). To succeed in its request, Defendant must establish (1) that it will likely succeed on the merits on appeal; (2) that Defendant will suffer irreparable injury if the stay is denied; (3) the balance of the equities tip in Defendant's favor; and (4) a stay is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Defendant fails on each point.

1

**I.      Defendant Has Not Made a Strong Showing That It Is Likely to Succeed on the Merits**

Defendant incorrectly states the burden it must satisfy to prevail on the first *Winter* factor. It is no longer sufficient for a movant to establish merely that their appeal presents a "substantial legal question" on the merits, Def. Br. at 3 (citing *Hilton v. Braunskill*, 481 U.S. 770, 778 (1987)); instead, the movant must satisfy the more stringent requirement that it is likely to succeed on the merits. *Farkas v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 861 F. Supp. 2d 716, 723 (E.D. Va. 2012) ("In considering whether a stay is appropriate pending the outcome of an appeal, the Court must use the factors announced in *Winter* …."); *see also Ohio Valley Envtl. Coal., Inc. v. U.S. Army Corps of Eng'rs*, 890 F. Supp. 2d 688, 692 (S.D. W. Va. 2012) (concluding "a party moving for a stay pending appeal must make at least as strong a showing on the first prong (likelihood of success)—and certainly not a lesser showing—as compared to a party moving for a preliminary injunction"). Defendant's brief rehashes its arguments from the summary judgment stage and adds no additional information that would indicate any likelihood of success on the merits on appeal, much less a strong showing.

First, Defendant contends that the unconstitutional admissions policy does not have a disparate impact on Asian Americans. Def. Br. at 5-6. Defendant's argument amounts to little more than a disagreement with this Court's conclusion that "[t]he proper method for determining the impact of the official action is a simple before-and-after comparison." Mem. Op., ECF 143, at 14-15 (internal citation and quotation marks omitted) (citing *North Carolina State Conference of NAACP v. McCrory*, 831 F.3d 204, 231 (4th Cir. 2016)). Considering that Defendant must appeal to the very same court that decided *McCrory* only six years ago, Defendant's likelihood of success on this aspect is weak.

Second, Defendant retreads the same argument, already rejected by this Court, that applying *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979), to Defendant's actions at TJ somehow eliminates the distinction between policies made at least in part "because of" and not merely "in spite of" their adverse impacts on an identifiable group. Def. Br. at 6-7; Mem. Op. at 27-28 ("That is the case here—the Board's policy was designed to increase Black and Hispanic enrollment, which would, by necessity, decrease the representation of Asian-Americans at TJ.").[1] Equally unavailing are Defendant's attempts to give Justice Kennedy's concurrence in *Parents Involved* the force of a majority opinion, Def. Br. at 6, and to apply the diversity rationale of *Grutter v. Bollinger*, 539 U.S. 306 (2003), to public secondary schools despite the Supreme Court's clear refusal to do so. Def. Br. at 6-7; *Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 724-25 (2007).

Finally, Defendant's claim that "the Court's analysis of the *Arlington Heights* factors was flawed" is nothing more than a disagreement with this Court's application of the law. Def. Br. at 8. Defendant's simple disagreement with this Court's finding that the process to change the TJ admission policy was "remarkably rushed and shoddy" is just its distaste with this Court's description of the uncontested factual record. Additionally, Defendant's contention that "there is nothing in the record to suggest that even a single School Board member voted to change the TJ admissions policy out of a desire to harm Asian students," *id.* at 8, shows a misunderstanding of *McCrory*; as the Fourth Circuit made clear and this Court duly noted, discriminatory intent does not require racial animus. *McCrory*, 831 F.3d at 233 ("Our conclusion does not mean, and we do

---

[1] The reference to two out-of-circuit cases, *Rothe Dev., Inc. v. U.S. Dep't of Def.*, 836 F.3d 57, 72 (D.C. Cir. 2016), and *Hayden v. Cty. of Nassau*, 180 F.3d 42, 50-51 (2d Cir. 1999), are unpersuasive, particularly in light of relevant in-circuit precedent. *See Ass'n for Educ. Fairness v. Montgomery Cty. Bd. of Educ.*, No. 8:20-02540-PX, 2021 WL 4197458, at *17 (D. Md. Sept. 15, 2021).

not suggest, that any member of the General Assembly harbored racial hatred or animosity toward any minority group."); Mem. Op. at 27.

Defendant's retread of its summary judgment arguments and disagreement with this Court's findings do not amount to a strong showing that it is likely to succeed on the merits of its appeal. Defendant's failure on this "most critical" factor counsels strongly against staying this Court's order pending appeal. *See Nken*, 556 U.S. at 427.

## II. Defendant Will Not Be Irreparably Injured Absent a Stay Pending Appeal

Defendant's inconvenience is not irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough."). The relief granted in this Court's Memorandum Opinion and Order is the same relief requested in Plaintiff's Complaint. Defendant has been aware since this lawsuit's start, one year ago, that it could be permanently enjoined from continuing to enforce the challenged admissions procedure if Plaintiff's prayer for relief was granted. Compl. at 25.

The Court made this possibility crystal clear at the September 17, 2021, hearing on Plaintiff's second motion for preliminary injunction. There, the Court stated: "But the board's on notice. They understand that we're trying this case, and we don't know what the outcome is going to be yet, so they've got to be prepared for that, don't they?" Hearing Transcript at 7:15-18 (Sept. 17, 2021). The Court later noted that the lawsuit could go to trial in January "and get a decision. It seems to me that that's plenty of time to get corrected whatever needs to be corrected, if that's warranted from the findings after the trial of the case." *Id*. at 20:11-14. Though a trial was ultimately unnecessary, this Court issued its opinion and order on February 25, 2022, finding that

4

Defendant engaged in unconstitutional discrimination and enjoining the further use of the challenged admissions policy. Mem. Op.; Order, ECF 144.

Despite being put "on notice" on September 17, 2021, Defendant did not use the intervening six months to prepare for the outcome that was reached. Instead, after waiting a full week, Defendant now asks this Court to delay justice for the Coalition for TJ and all Asian-American TJ applicants because it will be too difficult to stop using the unconstitutional admissions policy.

Defendant raises a number of excuses for its inability to comply with this Court's order. None are unexpected or unforeseeable. While complying may be challenging given Defendant's apparent lack of preparation, these difficulties are entirely self-inflicted.

First, Defendant contends that two of the three standardized tests used in TJ admissions prior to fall 2020, the ACT Aspire Science and ACT Aspire Reading tests, are no longer offered for 8th grade students. Def. Br. at 9. This fact has been known to Defendant since sometime between May 6, 2021, when Defendant stated that these tests "will not be offered again by the vendor before September [2021]," Def. Br. in Opp. to Pltf.'s Mot. for Prelim. Inj., ECF 24, at 1, and September 9, 2021, when TJ Admissions Director Jeremy Shughart stated in a declaration that "earlier this year," the vendor providing the two ACT Aspire exams announced they would no longer be offered. Dec. of Jeremy Shughart ¶ 20(a), ECF 64-2. Defendant had between six and ten months to plan for this eventuality, and its failure to do so does not create irreparable harm.

Second, Defendant complains of a lack of time to develop, consider, and vet alternative admissions policies. Def. Br. at 9. However, this Court's order does not require Defendant to develop a completely new admissions policy; it enjoins Defendant from further use or enforcement of the Fall 2020 Admissions Plan. Order, ECF 144. Defendant is free to use the admissions plan

5

in place prior to the fall 2020 changes, which has already been developed, considered, and vetted. Should Defendant wish to develop an entirely new admissions plan, it is free to do so when time allows for the careful, considered, and transparent process due such a significant policy.

Third, while Defendant claims that a compressed timetable for the admissions process "creates its own harm," a similar timetable during last year's admissions process resulted in a class that Fairfax County Public Schools praised as "high performers" who are "well prepared for the school's academic rigor."[2] Last year, evaluators did not begin reviewing the nearly 3,500 applications for the Class of 2025 until May 3, 2021, Def. Opp. to Mot. for Prelim. Inj., ECF 24, at 20, and admissions decisions were announced on June 23, 2021. At no point during its opposition to Plaintiff's two motions for preliminary injunction did Defendant argue that such a timetable imposed a burden, much less a significant burden, on the School Board and admissions staff. Its contention to the contrary now is unpersuasive and any "administrative burdens" resulting from Defendant's failure to heed this Court's warning six months ago fall short of irreparable harm. Def. Br. at 10.

### III. A Stay Will Substantially Injure Plaintiff

Less than two weeks ago, this Court held that Defendant violated the Fourteenth Amendment when it "employed proxies that disproportionately burden Asian-American students" and failed to meet the demanding requirements of strict scrutiny. Memo. Op. at 12. Carved over the door of the federal courthouse where this Court sits is the phrase "Justice Delayed, Justice Denied." The continued application of the challenged admissions policy *after it has already been*

---

[2] FCPS, TJHSST Offers Admission to 550 Students; Broadens Access to Students Who Have an Aptitude for STEM, June 23, 2021, https://www.fcps.edu/news/tjhsst-offers-admission-550-students-broadens-access-students-who-have-aptitude-stem#:~:text=Thomas%20Jefferson%20High%20School%20for,for%20the%20Class%20of%202025.

6

*ruled unconstitutional* is a denial of justice and irreparable harm to Plaintiff and all Asian-American applicants to TJ. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976) (the deprivation of a constitutional right "for even minimal periods of time, unquestionably constitutes irreparable injury"); *Ross v. Meese*, 818 F.2d 1132, 1135 (4th Cir. 1987) (the "denial of a constitutional right … constitutes irreparable harm").

Defendant also confuses standing analysis with the third *Winter* factor. To prove associational standing, as Plaintiff successfully did,[3] an organization must "make specific allegations establishing that *at least one identified member* had suffered or would suffer harm." *Southern Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013) (citation omitted; emphasis added). Plaintiff identified several members with children in sixth, seventh, and eighth grades who would suffer imminent injury if Plaintiff did not prevail in its case. Compl. ¶¶ 13-14. With the passage of a new school year, Plaintiff updated its identification of members with children intending to apply to TJ. Pltf's Cross-Motion for Summary Judgment, ECF 122, at 2. Each member would have standing to sue in his or her own right because the challenged admissions policy rendered their children unable to compete on a level playing field for a racial purpose. *See Parents Involved*, 551 U.S. at 719. At no point has Plaintiff ever asserted that the handful of members identified to support Plaintiff's associational standing comprise *all* Coalition for TJ members with children harmed by the unconstitutional admissions policy. Defendant's repeated insistence that only two children of Coalition for TJ members will be harmed is illogical. Def. Br. at 10-11.

---

[3] Mem. Op. at 11-12 ("The Coalition has standing to bring this action on behalf of its members.").

7

More illogical, however, is Defendant's assertion that "it is not all apparent how either [child] would be harmed by adhering to the current admissions process." Def. Br. at 11. By "current admission process," Defendant means the Fall 2020 admissions process that this Court found discriminates against Asian-American students in violation of the Fourteenth Amendment. The Supreme Court has been clear that "one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff." *Parents Involved*, 551 at 719 (citing *Adarand Constructors v. Pena*, 515 U.S. 211, 211 (1995); *Ne. Fla. Chapter, Assoc. Gen. Contractors of Am. v. Jacksonville*, 508 U.S. 656, 666 (1993)). In the instant case, staying this Court's ruling would result not only in children forced to compete in a race-based system that *may* prejudice Plaintiff's members' children, but children forced to compete in a race-based system that *does* prejudice Plaintiff's members' children. Mem. Op. at 27-28. Extending the use of the unconstitutional Fall 2020 admissions policy will irreparably harm not only the current 8th grade applicants to TJ, but also every future class of applicants until all appeals are exhausted.

## IV.     Denying the Stay Serves the Public Interest

It is always in the public interest to vindicate constitutional rights. *See Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011). Indeed, the Fourth Circuit has questioned whether the government can ever rely on hardship to prevent the issuance of an injunction where constitutional rights are at stake. *See Newsom ex rel. Newsom v. Abemarle Cty. Sch. Bd.*, 354 F.3d 249, 261 (4th Cir. 2003). The public interest is served in this case only by denying the motion to stay.

Defendant has an interest in seeing that its schools operate in an orderly fashion and without interruption, but that interest cannot outweigh a public interest in upholding the constitutional rights of its students. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) ("With respect to the harm that would befall if the injunction is left in place, we agree with the

8

district court that a state is in no way harmed by issuance of a preliminary injunction which prevents the state from enforcing restrictions likely to be found unconstitutional. If anything, the system is improved by such an injunction … upholding constitutional rights surely serves the public interest.") (citation omitted); *Am. Fed'n of Teachers-W. Virginia, AFL-CIO v. Kanawha Cty. Bd. of Educ.*, 592 F. Supp. 2d 883, 905-06 (S.D. W. Va. 2009) (stay of injunction against unconstitutional school policy pending appeal denied because school was "not harmed in any legally cognizable sense by being enjoined from committing an alleged constitutional violation," and that "if anything, they benefit from such an injunction"). Such an important interest outweighs any administrative inconvenience suffered by Defendant.

Defendant's concern for "disrupt[ing] the expectations" of applicants' families and "throw[ing] applicant's plans into disarray," Def. Br. at 11, should it be prevented from using the unconstitutional Fall 2020 admissions policy rings hollow. After all, it was Defendant who, in October 2020, voted to eliminate the TJ standardized admissions test only one month before it was scheduled to be administered. Mem. Op. at 7-8. It was also Defendant who left applicants in limbo for two more months until finally voting on a replacement for the previous admissions process. *Id*. at 9-10. "[H]ardship and distress," Def. Br. at 12, has sadly accompanied the TJ admissions process since October 6, 2020. That admissions process has now been held unconstitutional, and the public interest is served best by immediately upholding the constitutional rights of TJ applicants.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Stay Pending Appeal should be denied.

Dated: March 9, 2022.                     Respectfully submitted,

s/ Alison E. Somin

ERIN E. WILCOX*,                          ALISON E. SOMIN, Va. Bar No. 79027
  Cal. Bar No. 337427                   CALEB KRUCKENBERG*,
CHRISTOPHER M. KIESER*,                     Penn. Bar No. 322264
  Cal. Bar No. 298486                     Admission to the Bar of Virginia Pending
Pacific Legal Foundation                  Pacific Legal Foundation
555 Capitol Mall, Suite 1290              3100 Clarendon Blvd., Suite 610
Sacramento, California 95814              Arlington, Virginia 22201
Telephone: (916) 419-7111                 Telephone: (202) 557-0202
Facsimile: (916) 419-7747                 Facsimile: (916) 419-7747
EWilcox@pacificlegal.org                  ASomin@pacificlegal.org
CKieser@pacificlegal.org

*Pro Hac Vice                             GLENN E. ROPER*,
                                          Colo. Bar No. 38723
                                          Pacific Legal Foundation
                                          1745 Shea Center Dr., Suite 400
                                          Highlands Ranch, Colorado 80129
                                          Telephone: (916) 503-9045
                                          Facsimile: (916) 419-7747
                                          GERoper@pacificlegal.org

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on March 9, 2022, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system. Counsel for Defendant are registered with the Court's CM/ECF system and will receive a notification of such filing via the Court's electronic filing system.

s/ Alison E. Somin
ALISON E. SOMIN, Va. Bar No. 79027
Pacific Legal Foundation
3100 Clarendon Blvd., Suite 610
Arlington, Virginia 22201
Telephone: (202) 557-0202
Facsimile: (916) 419-7747
ASomin@pacificlegal.org
*Counsel for Plaintiff*
